UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| BRUCE FERRINI, | ) | Case No. 5:02CV2437 |
|  | ) |  |
| Plaintiff, | ) | MAGISTRATE JUDGE |
|  | ) | GEORGE J. LIMBERT |
| v. | ) |  |
|  | ) |  |
| JAMES E. FERRELL, et al., | ) |  |
|  | ) |  |
| Defendants/Third- Party | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| FERRINI RARE BOOKS OF | ) |  |
| AKRON, et al., | ) | **ORDER** |
|  | ) |  |
| Third-Party Defendants. | ) |  |

The instant matter is before this Court on a Second Motion to Show Cause filed by Third-Party

Plaintiffs James E. Ferrell, Ferrell Capital, Inc., James E. Ferrell Revocable Trust, Ferrell International,

Ltd., and Theresa Schekirke (collectively referred to as "Third-Party Plaintiffs") against Third-Party

Defendant Michel van Rijn (van Rijn) and upon Third-Party Plaintiffs' Third Motion to Show Cause and

Motion for Injunctive Relief against van Rijn.  ECF Dkt. #s 158, 164.  Van Rijn has filed a response

only to the Second Motion to Show Cause.  ECF Dkt. #160.

-1-



The Court held a hearing on all of these Motions on October 22, 2004, with James E. Ferrell, Theresa Schekirke appearing, as well as their counsel, Attorneys Thomas Lee, Heather Tonsing, and Charles Bowers. Despite notice to Mr. van Rijn, neither he nor counsel on his behalf appeared at the hearing.

For the following reasons, the undersigned GRANTS Third-Party Plaintiffs' Second Motion to Show Cause, GRANTS Third-Party Plaintiffs' Third Motion to Show Cause, and GRANTS Third-Party Plaintiffs' Motion for Injunctive Relief. ECF Dkt. #s 158, 164.

## I.   FACTUAL AND PROCEDURAL HISTORY

On March 8, 2003, the parties in the instant matter executed a Settlement Agreement, which included in pertinent part:

**6.   Modification of van Rijn Website**

    (a)   Within 12 hours of the execution of this Agreement, van Rijn shall permanently remove from the van Rijn Website any and all mention of:

        (1)   Ferrell's current and future art collection;

        (2)   Ferrell and all persons associated with Ferrell including, without limitation, Ferrell, the Ferrell Entities, Elizabeth J. Ferrell, Schekirke, *Michael Bennett*, Henry Kim, and *Katharine Reid*;

        (3)   all entities of which Ferrell is an officer, director, partner or owner;

                * * * *

    (b)   For a period of twenty (20) years from the date of Closing, van Rijn shall not, personally or in conjunction with any other person or entity, make or resume any reference to any of the persons, entities, or items identified in Paragraph (6)(a) hereof (i) on the van Rijn Website, (ii) on any other website or publication operated, associated with, managed or created by van Rijn or (iii) in any form of communication (written or oral) whatsoever, or make any reference

-2-

to any acquisition of art or any other activity by Ferrell, nor shall van Rijn, personally or in conjunction with any other person or entity, make any mention of any of the other persons named in Paragraph 6(a) of this Agreement . . . .

(c)    As a condition precedent to the negotiation of this Agreement, on or about February 1, 2003, van Rijn purged the van Rijn website of most of the references prohibited by Paragraph 6(a) of this Agreement and, with the consent of Ferrell, posted the following statement (the "van Rijn Website Statement") on the van Rijn website:

> Re: James Ferrell Collection:
>
> Additional information has been obtained concerning the antiquities collected by James Ferrell previously discussed herein. This information, and Mr. Ferrell's agreement on an independent evaluation of the Theodosius Coin Mount and return of the Theodosius Coin Mount if said evaluation establishes that the exportation of that piece was improper, demonstrates Mr. Ferrell's commitment to insure the integrity of his collection and the cultural, historical and artistic interests of Turkey and all other nations. I am removing those portions of this site in recognition of Mr. Ferrell's commitment.

The van Rijn Website Statement shall be the only statement made by van Rijn concerning Ferrell or any of the persons or items mentioned in Paragraph 6(a) of this Agreement.

ECF Dkt. #30, at 11-13. On March 13, 2003, this Court journalized an Agreed Dismissal Entry which expressly incorporated all of the terms of the Settlement Agreement. ECF Dkt. #35. The Court also retained continuing jurisdiction over the enforcement of the Settlement Agreement or any disputes arising thereunder. *Id.*

On August 13, 2003, Mr. van Rijn filed a Motion to Vacate Dismissal Entry or, Alternatively, to Interpret Settlement Agreement; For Leave to Take Depositions and Application for Letter Rogatory. ECF Dkt. #71. In this motion, van Rijn attempted to avoid the Settlement Agreement or modify its relevant provisions by arguing, *inter alia*, that the gag provision of the Settlement Agreement

was a prior restraint on speech. *Id.* On February 27, 2004, this Court, following extensive briefing and oral arguments, issued a Memorandum Opinion and Order determining that the private gag provisions contained in the Settlement Agreement were constitutional as they were not a prior restraint on speech and Mr. van Rijn had voluntarily waived his First Amendment rights under the Settlement Agreement. ECF Dkt. #138. Specifically, this Court held:

> Here, the Settlement Agreement is very specific and unambiguously provides that van Rijn shall not publish or otherwise make reference to Ferrell or the other named items and persons listed in Paragraph 6(a) of the Agreement. Thus, the gag provision constitutes a valid waiver of van Rijn's First Amendment rights. Moreover, the gag provision standing alone is not a prior restraint on speech because there is no government action involved. Indeed, the alleged restraint stems from a clear and unambiguous private agreement between two private parties and government action is not involved or implicated in any         way. Therefore, the undersigned concludes that the private gag agreement contained in         the Settlement Agreement, standing alone, does not constitute a prior restraint in violation of the First Amendment of the United States Constitution. Accordingly, the gag provision of the Settlement Agreement is valid.

ECF Dkt. #138, at 30. On March 29, 2004, van Rijn appealed the Court's decision to the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit"). ECF Dkt. #143. That appeal is still pending.

On July 13, 2004, Third-Party Plaintiffs filed a Motion to Show Cause. ECF Dkt. #147. Third-Party Plaintiffs asserted that Mr. van Rijn published an article entitled "The Mistake From The Museum At The Lake," on his website, www.michelvanrijn.com/artnews/artnws.htm. In this article posted on his website, Mr. van Rijn referred to Katharine Lee Reid ("Reid") and Michael Bennett ("Bennett"), two of the individuals identified in Paragraph 6(a) of the Settlement Agreement as persons about whom van Rijn was prohibited from publishing.

-4-

On July 27, 2004, Mr. van Rijn filed a Motion to Unseal the Record as it Relates to Defendants' Motion to Show Cause ("Motion to Unseal the Record"). ECF Dkt. #149. On August 13, 2004, Third-Party Plaintiffs filed their Opposition to Motion to Unseal the Record. ECF Dkt. #155. On August 26, 2004, this Court denied Mr. van Rijn's Motion to Unseal the Record due to this Court's lack of jurisdiction over the issue as Mr. van Rijn had requested that the Sixth Circuit unseal the record in his appeal that was pending before the Sixth Circuit. ECF Dkt. #156.

In the same Order issued August 26, 2004, this Court also granted Third-Party Plaintiffs' Motion to Show Cause and held Mr. van Rijn in contempt of court for his publication of the article naming Reid and Bennett. EFC Dkt. #156. This Court fined Mr. van Rijn $500.00 for his contemptuous conduct and admonished him that the Court would be strongly inclined to impose sanctions, including an award of attorney fees, for any future violation of the terms of the Settlement Agreement. *Id.* On September 30, 2004, Mr. van Rijn paid the $500.00 civil contempt fine. ECF Dkt. #159. Mr. van Rijn did not appeal the Court's August 26, 2004 Contempt Order or the $500.00 sanction.

On September 17, 2004, Third-Party Plaintiffs filed a Second Motion to Show Cause. ECF Dkt. #158. On October 4, 2004, Mr. van Rijn filed a response brief to the Second Motion to Show Cause. ECF Dkt. #160. On that same day, Attorney Daniel J. McGown, counsel for Mr. van Rijn, filed a Motion to Withdraw as van Rijn's counsel, explaining that on October 4, 2004, van Rijn had "recommenced publication, upon his website, of materials which this Court's orders prohibit van Rijn from publishing" against counsel's advice. ECF Dkt. #161.

On October 6, 2004, Third-Party Plaintiffs filed a Third Motion to Show Cause and a Motion for Injunctive Relief, requesting expedited consideration. ECF Dkt. #164. On October 12, 2004, the Court ordered van Rijn to file his response to that motion on or before October 15, 2004 and to personally appear before this Court on October 18, 2004 at 9:00 a.m. to show cause why he should not be found in contempt for violating the Court's March 13, 2003 journalized Agreed Dismissal Entry as interpreted by this Court's February 27, 2004 Memorandum Opinion and Order, and this Court's August 26, 2004 Order. ECF Dkt. #165. Van Rijn confirmed receipt of notice of this Court's hearing Order through when he e-mailed the Court's Courtroom Deputy on October 13, 2004 and requested additional time within which to respond. ECF Dkt. #167. Van Rijn also explained that he needed additional time to secure new counsel on the case and to make travel arrangements in order to appear at a hearing. *Id.*

On October 13, 2004, the Court issued an Order extending van Rijn's time to respond to Third-Party Plaintiffs' Motions to October 21, 2004 and rescheduling the hearing on the Motions to October 22, 2004. ECF Dkt. #166. However, van Rijn failed to file a brief, and neither he, nor counsel on his behalf, appeared at the hearing.

In the early morning hours of October 22, 2004, the date of the rescheduled hearing, the Court received another e-mail from Mr. van Rijn indicating that he would not be able to attend the hearing because he had custody of his children for the past two months and they needed him in the United Kingdom. ECF Dkt. #169. He further indicated that he did not mean to disrespect the Court by his nonappearance. *Id.*

The Court notes that on October 25, 2004, after the hearing, Mr. van Rijn e-mailed this Court asserting that extenuating circumstances existed which should be brought to the Court's attention. ECF Dkt. #168. Mr. van Rijn referred to an article that he published about Mr. Ferrell and alleged terrorist relations of Ferrellgas and wondered why Mr. Ferrell wanted him to be held in contempt for the instant publications instead of the mentioned Ferrellgas reference. The undersigned finds that this is a totally insufficient response and notes that the Ferrellgas reference to terrorist relations is indeed encompassed in the instant Motions of Third-Party Plaintiffs.

The Court addresses each Motion in turn.

## II.    DISCUSSION

### A.    JURISDICTION

In their Second Motion to Show Cause, Third-Party Plaintiffs request that this Court order van Rijn to show cause as to why (1) he should not be held in contempt of the Agreed Dismissal Entry dated March 13, 2003, (ECF Dkt. #35) and the Memorandum Opinion and Order dated February 27, 2004 (ECF Dkt. #138), as interpreted by this Court's Contempt Order of August 26, 2004 (ECF Dkt. #156), and as to why (2) this Court should not sanction him for his conduct, including an award of attorneys' fees and expenses. ECF Dkt. #158, at 1-2. In their Third Motion to Show Cause, Third-Party Plaintiffs request that this Court order van Rijn to show cause as to why (1) he should not be held in contempt of this Court's orders for materials published beginning on October 3, 2004 and as to why (2) the Court should not sanction him for his conduct for that publication. In addition, Third-Party Plaintiffs request that Court award them injunctive relief and order that publication of the website be enjoined as a result of van Rijn's multiple instances of contemptuous conduct. ECF Dkt.

-7-

#164 at 1-2.

Before considering the merits of the foregoing Motions, the Court must first consider whether continuing jurisdiction exists over the instant matters since van Rijn has appealed this Court's decision on the validity of the Settlement Agreement to the Sixth Circuit.

As stated in the undersigned's August 26, 2004 Order, as a general rule, an effective notice of appeal divests a district court of jurisdiction over the matter forming the basis for the appeal. *See, e.g., Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 378-79 (1985); *Island Creek Coal Sales Co. v. City of Gainesville*, 764 F.2d 437, 439 (6th Cir.), cert. denied, 474 U.S. 948 (1985). However, "the mere pendency of an appeal does not, in itself, disturb the finality of a judgment." *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987)(quoting *Wedbush, Noble, Cooke, Inc. v. SEC*, 714 F.2d 923, 924 (9th Cir. 1983)). "The district court has jurisdiction to act to enforce its judgment so long as the judgment has not been stayed or superseded." *Cincinnati Bronze*, 829 F.2d at 588 (quoting *Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 298, 299 n.2 (5th Cir. 1984)). Although a district court may not alter or enlarge the scope of its judgment pending appeal, it does retain jurisdiction to enforce the judgment. *Cincinnati Bronze*, 829 F.2d at 588 (citing *Deering Milliken, Inc. v. Federal Trade Commission*, 647 F.2d 1124, 1128-29 (D.C. Cir.) (mem.), cert. denied, 439 U.S. 958 (1978)). Thus, when "the district court is attempting to supervise its judgment and enforce its order through civil contempt proceedings, pendency of appeal does not deprive it of jurisdiction for these purposes." *Island Creek*, 764 F.2d at 440; *see also Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976).

-8-

As in the last Motion to Show Cause, van Rijn has not filed a motion to stay the instant proceedings during the pendency of his appeal.  In addition, van Rijn has failed to demonstrate that the judgment has been otherwise stayed or superseded.  Based on the foregoing authority, and van Rijn's lack of action as to staying the proceedings or showing that this case has otherwise been superseded or stayed, this Court retains the power to enforce, but not expand upon, its Orders, including the Agreed Dismissal Entry, in which this Court incorporated the Settlement Agreement in its entirety.  *Cincinnati Bronze*, 829 F.2d at 588.  Accordingly, the undersigned finds that this Court retains jurisdiction over the instant Motions to Show Cause and the Motion for Injunction.

Moreover, Mr. van Rijn has accepted service of process and is subject to the jurisdiction of this Court.  ECF Dkt. #31.  In addition, at the October 22, 2004 hearing, the Court witnessed Mr. van Rijn, on videotape and under oath, voluntarily accepting service of process and submitting to this Court's jurisdiction.

## B.  SECOND MOTION TO SHOW CAUSE

In their Second Motion to Show Cause, Third-Party Plaintiffs seek a contempt Order against Mr. van Rijn because, beginning September 5, 2004 and continuing to the present date, he made additional references to Reid and Bennett, two of the individuals identified in Paragraph 6(a) of the Settlement Agreement which this Court incorporated in its entirety into the Agreed Dismissal Entry.  ECF Dkt. #158.  Third-Party Plaintiffs assert that Mr. van Rijn has violated this Court's Orders by posting a direct link on his website to theartnews.com and a link to an article which mentions Reid and Bennett by name.  *Id.* at 1-2.  Third-Party Plaintiffs assert that they contacted Mr. van Rijn's counsel at that time about the contemptuous conduct and demanded that the references be removed from the

website. *Id.* at 2. Third-Party Plaintiffs contend that they received no response to their demands and the references and links remain on the van Rijn website to this date. *Id.* at 2-3.

In response to Third-Party Plaintiffs' Second Motion to Show Cause, van Rijn does not deny naming Reid and Bennett in his website article. However, he claims that the provisions of the Settlement Agreement do not apply because the prohibited references appear on the van Rijn website through a directed link to a separate webpage. ECF Dkt. #160.

While Third-Party Plaintiffs assert that the Court's granting of their First Motion to Show Cause is similar to the instant Motion to Show Cause and thus a granting of this Motion is warranted, the Court disagrees. In the First Motion to Show Cause, the Court did not find that mere references to unnamed individuals were sufficient reasons to find Mr. van Rijn in contempt. Rather, the undersigned held that:

> in the previous article, van Rijn included references to Ferrellgas Partners, William Ferrell's wife, and other individuals that are closely connected to William Ferrell. However, in the instant matter, there are no similar references that could evidence that the statement was made in reference to William Ferrell. Therefore, in light of the heightened burden in civil contempt proceedings, the undersigned finds that Third-Party Plaintiffs have failed to establish by clear and convincing evidence that the reference to a "certain Fortune 500 CEO with big ears" was a reference to William Ferrell. *Cincinnati Bronze*, 829 F.2d at 591. Accordingly, the undersigned declines to hold van Rijn in contempt of the Agreed Dismissal Entry for his reference to a "certain Fortune 500 CEO with big ears."
> \* \* \*
> In the first article, van Rijn clearly makes reference to Katherine Lee Reid and Michael Bennett by name, and claims that they were involved in the illegal smuggling of the ancient sculpture. ECF Dkt. #147, Exhibit A.
> \* \* \*
> Based on the foregoing, it is clear that van Rijn violated the terms of the Settlement Agreement by making *specific references* to Reid and Bennett on his website.

ECF Dkt. #156 (emphasis added).

-10-

Nevertheless, as found in the prior Order of this Court on Third-Party Plaintiffs' First Motion to

Show Cause, the authority to punish for contempt is an inherent power of all American courts. *Ex*

*Parte Robinson*, 86 U.S. (19 Wall.) 505, 22 L. Ed. 205 (1874); *Hale v. State*, 55 Ohio St. 210, 45

N.E. 199 (1896); *Zakany v. Zakany*, 9 Ohio St. 3d 192, 459 N.E.2d 870 (1984). Indeed, when a

court seeks to enforce its order or supervise its judgment, one weapon in its arsenal is contempt of

court. *See NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987). Recognizing that the

power "to punish for contempts" should not be used lightly, the Supreme Court has stated that this

power "is a necessary and integral part of the independence of the judiciary, and is absolutely essential

to the performance of the duties imposed on them by law. Without it they are mere boards of

arbitration, whose judgments and decrees would be only advisory." *Gompers v. Bucks Stove &*

*Range Co.*, 221 U.S. 418, 450 (1911). Contempt proceedings enforce the message that court orders

and judgments are to be complied with in a prompt manner. *Cincinnati Bronze*, 829 F.2d at 590.

Further, in civil contempt proceedings, "judicial sanctions . . . may, in a proper case, be

employed for either or both of two purposes; to coerce the defendant into compliance with the court's

order, and to compensate the complainant for losses sustained." *United States v. United Mine*

*Workers of Am.*, 330 U.S. 258, 303-04 (1947). In order to hold a litigant in contempt, the movant

must produce clear and convincing evidence that shows that the defendant "violated a definite and

specific order of the court requiring him to perform or refrain from performing a particular act or acts

with knowledge of the court's order." *Cincinnati Bronze*, 829 F.2d at 591 (quotation and brackets

omitted). Clear and convincing evidence is a not a light burden and should not be confused with the less

stringent, proof by a preponderance of the evidence. *See Consol. Coal Co. v. Local Union No.*

-11-

*1784, United Mine Workers of Am.*, 514 F.2d 763, 766 (6th Cir. 1975).

Once the moving party establishes a prima facie case, the burden shifts to the contemnor, who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order. *United States v. Rylander*, 460 U.S. 752, 757 (1983) ("where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense, the defendant has a burden of production."). To meet this burden, the contemnor must show "categorically and in detail why he or she is unable to comply with the court's order." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quotation omitted). Finally, when evaluating the failure of a party to comply with a court order, the Court must also consider whether the party "took all reasonable steps within [his] power to comply with the court's order." *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989).

Paragraph 6(a) includes Katharine Reid and Michael Bennett as two of the individuals about whom "[f]or a period of twenty (20) years from the date of the Closing," Mr. van Rijn agreed not to,

> personally or in conjunction with any other person or entity, make or resume any reference to any of the persons, entities or items identified in Paragraph 6(a) hereof (i) on the van Rijn website, (ii) on any other website or publication operated, associated with, managed or created by van Rijn or (iii) in any form of communication (written or oral) whatsoever, or make any reference to any acquisition of art or any other activity by Ferrell, nor shall van Rijn, personally or in conjunction with any other person or entity, make any mention of any of the other persons named in Paragraph 6(a) of this Agreement.

ECF Dkt. #35 at 11-12.

Mr. van Rijn's website contains a notation dated September 5, 2004 and states that "Months Ago on MvR. We told you so;-)" then has a link to theartnewspaper.com, with the title of the article

-12-

from theartnewspaper.com article "Cleveland unveils its new Greek bronze but important questions about the statue's provenance remain unanswered" "Acquired from gallery co-owned by convicted smuggler." ECF Dkt. #s 157, 158. Mr. van Rijn's website further quotes from the article the statement by Mr. Bennett that "We have guarantees that everything the Aboutaams told us was in good faith and true." *Id*. And underneath this statement, Mr. van Rijn states, "Yeah yeah right, pigs can fly and the world is flat!" *Id*. He then posts another link for the full article. He also links to "see MvR.com: The mistake from the museum at the lake." *Id*.

The clear language of Paragraph 6(b) of the Settlement Agreement expressly prohibits Mr. van Rijn from "mak[ing] or resum[ing] any reference to" any of the persons in Paragraph 6(a). Thus, Mr. van Rijn, by entering into the Settlement Agreement, is forbidden by that paragraph from directing a link to another website which names Reid and Bennett or makes "any reference" to them. ECF Dkt. #35 at 12. The Court therefore rejects Mr. van Rijn's response to the Second Motion to Show Cause and finds that his September 5, 2004 and continuing post to that link from his website constitutes "mak[ing] or resum[ing] any reference to any of the persons, entities, or items identified in Paragraph 6(a)" "in conjunction with any other person or entity." *Id*.

Accordingly, based upon Third-Party Plaintiffs' Second Motion to Show Cause and the attached exhibits showing the van Rijn website references to Ms. Reid and Mr. Bennett, as well as the Court's rejection of Mr. van Rijn's assertions in his response, the Court finds that van Rijn is in civil contempt of this Court's journalization of the Agreed Dismissal Entry of March 13, 2003, and this Court's Memorandum Opinion and Order of February 27, 2004 as interpreted by this Court's August 26, 2004 Contempt Order. ECF Dkt. #s 35, 138, 156. Consequently, the Court GRANTS Third-

Party Plaintiffs' Second Motion to Show Cause.  ECF Dkt. #158.

## C.    THIRD MOTION TO SHOW CAUSE

As stated above, Third-Party Plaintiffs move the Court in their Third Motion to Show Cause for

an Order that Mr. van Rijn show cause as to why (1) the Court should not hold him in contempt for

violating this Court's orders for materials that he published beginning on October 3, 2004 and

continuing on his website; and why (2) the Court should not sanction him for those publications.

Third-Party Plaintiffs also request the Court for an award of injunctive relief, ordering that publication of

the website be enjoined as a result of van Rijn's multiple instances of contemptuous conduct.  ECF Dkt.

#164 at 1-2.

Ms. Lindsay P. Jones, Paralegal for the attorneys for Third-Party Plaintiffs, testified at the

October 22, 2004 hearing.  She testified that part of her official duties as a paralegal include  monitoring

the van Rijn website for violations of the Settlement Agreement by his mentioning or references to those

individuals and items covered under Paragraph 6(a) and 6(b) of the Settlement Agreement.  Ms. Jones

testified that on October 3, 2004, Mr. van Rijn began publishing an article on his website entitled

"Pipeline To Justice", which included a link to another van Rijn article on the same website entitled "No

Propane No Gain."  The latter article is a series of articles directly relating to and repeatedly mentioning

Ferrell and other persons, entities and items identified in Paragraph 6(a) of the Settlement Agreement.

The article also quotes supposed conversations that Mr. van Rijn had with his attorney at the time

relating to his publication of those articles and references on his website.  ECF Dkt. #163, 164, Exhibit

#s 1, 2.  Since October 3, 2004, Ms. Jones testified that van Rijn has continued to publish articles,

sometimes several articles per day, with numerous references in each article to persons or entities

-14-

identified in Paragraph 6(a) of the Settlement Agreement. According to Ms. Jones, Mr. van Rijn has

published articles containing prohibited references on October 7, 2004, October 8, 2004, October 10,

2004, October 12, 2004, October 14, 2004, October 17, 2004, October 18, 2004 October 19,

2004, October 20, 2004, and October 21, 2004. Based upon the evidence presented at the hearing,

as well as the exhibits attached to Third-Party Plaintiffs' Third Motion to Show Cause, this Court finds

that each of said offending articles has remained published on the website from the date it was initially

published through the commencement of the October 22, 2004 contempt hearing.

The Court finds that these rambling articles and references clearly constitute violations of the

Settlement Agreement and this Court's prior Orders relating thereto. The postings on Mr. van Rijn's

website clearly mention Mr. Ferrell and his corporate entities numerous times and show a pictorial and

typographical chronology of events between Third-Party Plaintiffs and Mr. van Rijn and those parties

and this Court. Mr. van Rijn also mentions and refers to Mr. Bennett numerous times, as well as Ms.

Reid, Mrs. Ferrell and Ms. Schekirke. ECF Dkt. #163, Exhibits A1, A1a, A1b, A1c, 2A.

Based upon the evidence adduced at the October 22, 2004 hearing and the exhibits presented

in Third-Party Plaintiffs' Exhibits for the October 22, 2004 Hearing, this Court concludes that from

August 26, 2004, the date of the last Contempt Order, until October 22, 2004, Mr. van Rijn has

committed 10,590 separate violations of Paragraph 6 of the Settlement Agreement and this Court's

Order as to that Agreement. ECF Dkt. #156. The Court bases this total on the number of separate

references to each of the persons and items named in the Settlement Agreement in Paragraph 6(a)

mentioned or referred to by Mr. van Rijn on his website times each day upon which the mention or

reference remained on the website. The Court deems each offending publication as a separate act for

-15-

each day upon which it remained or remains on the van Rijn website.

Mr. van Rijn's website contains violation upon violation of the Settlement Agreement, as he mentions Mr. Ferrell and his entities directly no less than 364 times on the website over a span of seventeen days, from October 3, 2004 through October 20, 2004 for a total of 5,678 violations. *See* Third-Party Plaintiffs' Exhibits for October 22, 2004 Hearing, Exhibit #18. Mr. van Rijn has referred to or reference Ms. Schekirke 22 times over 59 days on his website for a total of approximately 1,298 separate violations. *Id.* He has also referred to or mentioned Mrs. Ferrell a total of 4 times over a period of twenty days for a total of 80 violations. *Id.* Katharine Reid is mentioned or directly referred to 22 times over 59 days for a total of 1,298 violations and Michael Bennett is mentioned or referred to on Mr. van Rijn's website 35 times over 113 days for a total of 3,955 violations. *Id.* In addition, Mr. van Rijn mentions or refers to Henry Kim 2 times for a 38-day period and he mentions or refers to items in Mr. Ferrell's collection 127 times over 36 days on the website. *Id.* In total, Mr. van Rijn has committed 10,590 separate violations of this Court's Orders, including those interpreting the Settlement Agreement.

Accordingly, the Court GRANTS Third-Party Plaintiffs' Third-Motion to Show Cause and FINDS Third-Party Defendant Michel van Rijn is in civil contempt of the Agreed Dismissal Entry (ECF Dkt. #35) and this Court's Memorandum, Opinion and Order dated February 27, 2004 (ECF Dkt. #138) as further interpreted by this Court's August 26, 2004 Contempt Order (ECF Dkt. #156) for the website publications which commenced October 3, 2004 and continue to the present.

## D.   DEFAMATION

At the hearing, Mr. Ferrell testified that the numerous specific statements published on the van

-16-

Rijn website, including claims of improper and criminal conduct by Mr. Ferrell and his business

associates, and numerous lascivious and prurient references regarding Mr. Ferrell and his family, were

"utterly false" and had caused Third-Party Plaintiffs to suffer anguish and distress. Although Third-Party

Plaintiffs did not specifically request a specific finding regarding defamation in either of their current

Motions to Show Cause, they orally requested at the October 22, 2004 hearing that this Court make a

specific finding, based upon the evidence produced at the October 22, 2004 hearing, that various

articles on the van Rijn website were false and defamatory *per se.*

This Court notes that a federal court sitting in diversity jurisdiction on a case must apply the

substantive law of the state in which it sits. *Webster v. Edward D. Jones & Co. L.P.*, 197 F.3d 815,

818 (6th Cir. 1999). Further, the Settlement Agreement itself contains a provision wherein the parties

agreed that all terms of the Agreement would be governed by and interpreted in accordance with the

laws of the State of Ohio. ECF Dkt. #30 at 48. Thus, the elements of a defamation claim under Ohio

law are: "1) a false and defamatory statement concerning another; 2) an unprivileged publication to a

third party; 3) fault amounting at least to negligence on the part of the publisher; and 4) either

actionability of the statement irrespective of special harm or the existence of special harm caused by the

publication." *Fitzgerald v. Roadway Express, Inc.*, 262 F.Supp.2d 849, 855 (N.D.Ohio,2003),

citing *Akron-Canton Waste Oil, Inc., v. Safety-Kleen Oil Servs., Inc.*, 81 Ohio App.3d 591, 601,

611 N.E.2d 955 (1992) (*citing* 3 Restatement, 2d, Torts § 558 (1977)). Concerning the last element,

a publication is considered actionable *per se* and a party need not show special harm if the publication

consists of: (1) written statements which falsely charge the plaintiff with the commission of a crime, or

(2) oral declarations which falsely charge the plaintiff with the commission of a crime involving moral

-17-

turpitude which subjects the offender to infamous punishment. *Akron-Canton Waste Oil, Inc.*, 611 N.E.2d at 955, citing *State v. Smily*, 37 Ohio St. 30 (1881); 35 Ohio Jur. 3d Defamation 456 (1982).

Third-Party Plaintiffs in this case allege libel, which involves the publication of written defamatory statements. *A&B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995).  "As a general rule, all persons who cause or participate in the publication of libelous or slanderous matter are responsible for such publication." *Burns v. Rice*, 157 Ohio App.3d 620, 630, 813 N.E.2d 25 (2004), citing *Cooke v. United Dairy Farmers, Inc.* Franklin App. No. 02-AP-781, 2003-Ohio-3118, 2003 WL 21389646 at ¶ 25, quoting *Scott v. Hull*, 22 Ohio App.2d 141, 144, 259 N.R.2d 160 (1970).

At the October 22, 2004 hearing, Third-Party Plaintiffs produced evidence that Mr. van Rijn's October 5, 2004 website article, entitled "Pipeline To Justice Part II," and the links contained therein, republished numerous website articles which van Rijn had posted on his website in 2002 before the settlement of this case was reached or effectuated.  At the hearing, Third-Party Plaintiffs produced testimony from Mr. van Rijn, recorded on videotape on March 8, 2003, in which he testified he had no basis for the allegations about Third-Party Plaintiffs that he originally published on his website in 2002. Mr. van Rijn specifically testified at his videotaped deposition that he had no personal knowledge regarding the legality of any imports or exports of the Ferrell art collections, he had no personal knowledge about any allegations of Mr. Ferrell engaging in illegal activity concerning his collection, and he lacked personal knowledge about Mr. Ferrell's personal life.  Mr. van Rijn further testified at the deposition that he had no personal knowledge about the personal life of Ms. Schekirke.

-18-

This Court notes that in its October 13, 2004 Order, the Court specifically ordered Mr. van Rijn to appear personally at the October 22, 2004 hearing, but he elected not to do so. In the early morning hours of October 22, 2004, the undersigned's Courtroom Deputy received an e-mail from Mr. van Rijn indicating that he could not travel to the United States in order to appear for the hearing because his presence was required in the United Kingdom to care for his two children, over which he had custody. ECF Dkt. #169. However, Mr. van Rijn also states that he has had said custody of his children for the past two months. The Court notes that Mr. van Rijn could certainly have informed the Court of this situation in the first e-mail that he sent to the Court on October 13, 2004 wherein he requested additional time to obtain counsel and respond to Third-Party Plaintiffs' Third Motion to Show Cause and Motion for Injunction and appear for a hearing. Mr. van Rijn made no such mention in this e-mail.

Nevertheless, Mr. van Rijn's lack of response and lack of appearance at the October 22, 2004 hearing results in a finding that he has interposed no objection to Ferrell's request regarding a separate finding of defamation. Such a finding may indeed be relevant to the Court in assessing damages for van Rijn's contemptuous conduct as well as in obtaining enforcement of this Court's injunction order in other jurisdictions. This Court concludes, based upon clear, convincing and unrebutted evidence, that van Rijn's website publications which commenced on October 5, 2004, and continue to the present date, contain material that are libelous and defamatory *per se* to Third-Party Plaintiffs. *Jacobs v. Budak*, 156 Ohio App.3d 160, 175, 805 N.E.2d 111 (2004). ("Written matter is libelous *per se* if, on its fact, it reflects upon a person's character in a manner that will cause him or her to be ridiculed, hated, or held in contempt, or in a manner that will injure him in his trade or profession.").

-19-

The Court further notes that Mr. van Rijn states in his October 13, 2004 e-mail to the Court

that he "certainly" does not "disrespect" this Court.  ECF Dkt. #169.  However, reviewing the exhibits

showing Mr. van Rijn's website, and accessing the website at the October 22, 2004 hearing, the Court

clearly finds to the contrary.  Not only has he violated this Court's prior Contempt Order and Orders

relating to the Settlement Agreement, but Mr. van Rijn has also published documents filed in this Court

under seal, a blatant disrespect to this Court's Orders and a violation of this Court's Order.  In

addition, the Court notes the conclusion of Mr. van Rijn's October 3, 2004 "Pipeline to Justice" article,

which contains a picture of a cherub with his face superimposed on it urinating on Themis, the Goddess

of Justice.  ECF Dkt. #163, Exhibit 1 at 3.

For the above reasons, the Court GRANTS Third-Party Plaintiffs oral request for a specific

finding of defamation and finds that based upon the clear and convincing evidence produced at the

October 22, 2004 hearing, the articles on the van Rijn website are false and defamatory *per se.*

## E.  MOTION FOR INJUNCTION

Finally, in their Third Motion to Show Cause, Third-Party Plaintiffs request an Order from this

Court enjoining the publication of the van Rijn website unless and until all contemptuous references to

those individuals and items delineated in Paragraph 6(a) of the Settlement Agreement are purged

therefrom.  ECF Dkt. #164.  Third-Party Plaintiffs support this request by citing to the overwhelming

number of contemptuous and defamatory references which existed on the site when their Third Motion

for Contempt was filed.  *Id.*  They also presented the testimony of Paralegal Lindsey Jones and showed

the Court the website with references still remaining.  At the October 22, 2004 hearing, Third-Party

-20-

Plaintiffs, without objection, noted the substantial amount of additional contemptuous and defamatory material that van Rijn had published subsequent to the filing of their Third Motion for Contempt and the almost daily addition of new contemptuous material. Based upon that new evidence, Third-Party Plaintiffs modified their initial request, without objection, and move this Court to permanently enjoin the publication of the van Rijn website.

The Court must first determine whether it has the authority to grant such a request through its powers to sanction Mr. van Rijn for his blatant and flagrant violations of this Court's prior Orders and especially the Court's prior Contempt Order. The Court finds that it does possess such power to issue the injunction through its authority to issue sanctions against Mr. van Rijn for his continuous contemptuous conduct. *See Nettis Envtl. Ltd. v. IWI, Inc.*, 46 F.Supp.2d 722 (N.D. Ohio 1999)(noting that the defendant was ordered to "purge its webpage of all materials which could cause a web search engine looking for [the plaintiff], or similar phrases to pull up [the defendant's] webpage" and finding defendant in contempt for failing to promptly inform search engine services to cancel the defendant's offending registrations.).

The Court's contempt powers are broad, as described above in Section IIB on pages 10-12 above. The Court may use its contempt powers to coerce the defendant into complying with the court's order and/or to compensate the complainant for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947); *Nettis*, 46 F.Supp.2d at 728. In the instant case, the Court uses its contempt powers for both purposes. Mr. van Rijn has clearly shown through his website postings that he has not complied with this Court's Orders based upon the Settlement

-21-

Agreement or this Court's Order on Third-Party Plaintiff's First Motion to Show Cause. Further, Mr. Ferrell has testified to the negative affects that these postings have caused his reputation, his businesses and his personal life and that of his family.

In *Nettis*, the Court found that the "[i]ncarceration of an individual is a valid sanction for civil contempt if it is conditional, so that once the person complies with the court order the person will be released." 46 F.Supp.2d at 728, citing *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991). The Court found that such a sanction was permissible because the "contemnor carries the jail keys in his or her pocket." *Id.* However, this Court acknowledges that in imposing contempt sanctions, "a court is obliged to use the 'least possible power adequate to the end proposed.' " *Spallone v. United States*, 493 U.S. 265, 276, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990), quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 5 L.Ed. 242 (1821).

If this Court can temporarily restrain an individual's liberty through incarceration for violation of a civil contempt order, then the Court may also issue an injunction, a much less restrictive option, which temporarily bars a contemnor from publishing a website until he purges all references identified in a journalized entry issued by the Court on a settlement agreement which he violated. In the instant case, Mr. van Rijn's has continuously violated this Court's Orders, time and time again, even when reviewing only the period of time from this Court's original Contempt Order forward. The integrity of this Court's prior Orders has been impaired and the Court must impose stronger sanctions against Mr. van Rijn in order to strengthen the integrity of those Orders and to obtain his compliance with them. Obviously, neither the Court's sanction of $500.00 nor the Court's warning of the future award of costs and

-22-

attorney fees for the first Contempt had any affect on Mr. van Rijn's website postings.

Accordingly, the Court determines that the only sanction likely to obtain Mr. van Rijn's compliance with this Court's Orders is to issue the injunction sought by Third-Party Plaintiffs. Consequently, this Court GRANTS Third-Party Plaintiff's request for an injunction completely barring Mr. van Rijn from publishing his website at its current location, or at any subsequent web address to which he attempts to move, until he removes all references, articles, and links relating to those individuals about whom he is prohibited from referencing as per Paragraph 6(a) of the Settlement Agreement. The Court further enjoins Mr. van Rijn from posting any references, articles and links relating to those individuals identified in Paragraph 6(a) of the Settlement Agreement on any website, including his own or others, as he agreed to do in the Settlement Agreement.

### F.    THIRD PERSONS

Moreover, the Court ORDERS that any and all third persons acting in conjunction with Mr. van Rijn or in relation to his website be admonished that facilitating or assisting Mr. van Rijn in publishing his website may constitute aiding and abetting Mr. van Rijn's contempt of this Court's Orders, to the extent that the website contains any reference to any individuals, entities or objects identified in Paragraph 6 of the Settlement Agreement. The Court further admonishes such third-persons that any conduct that facilitates Mr. van Rijn's violation of Paragraph 6 of the Settlement Agreement may be subject to review by and further Order from this Court and may result in not only civil penalties but also criminal contempt.

-23-

## G.  SANCTIONS IN THE FORM OF FINES

Due to this Court's finding of yet another Contempt by Mr. van Rijn, his failure to respond to Third-Party Plaintiffs' Motion to Show Cause and Motion for Injunction, and his failure to appear at the instant hearing after the Court rescheduled both the response deadline and the hearing based upon his representations, the Court finds that sanctions in the form of fines are also appropriate.  "A fine is an appropriate sanction, so long as it is either (1) payable to a person harmed by the contempt, based upon evidence of actual loss, or (2) payable to the court if the contemnor does not comply with the court order."  *Nettis*, 46 F.Supp.2d at 728.

In this case, the Court finds that fines payable to both Third-Party Plaintiffs and the Court are appropriate.  Third-Party Plaintiffs have shown the harm suffered by Mr. van Rijn's contempt of this Court's Orders and the Court finds that Mr. van Rijn has not only failed to comply with those Orders, but he has flagrantly violated those Orders on a continuous basis, even immediately after the Court's first Contempt Order.  He also failed to appear at the hearing on the instant Motions even after the Court rescheduled the hearing and his deadline to respond to the Motions at his request.  Accordingly, in view of the Court's finding of civil contempt, the Court ORDERS Mr. van Rijn to pay a fine to both the Third-Party Plaintiffs and the Court in sums to be determined in a forthcoming Order.

## H.  ATTORNEY FEES

In its August 26, 2004 Contempt Order, this Court warned Mr. van Rijn that the Court "will be strongly inclined to impose sanctions, including an award of fees, for any future violation of terms of the Settlement Agreement."  ECF Dkt. #156 at 11.  Attorney fees are also an appropriate sanction for Mr.

-24-

van Rijn's contempt. *See Nettis*, 46 F.Supp.2d at 728-729. As demonstrated by the evidence adduced at the October 22, 2004 hearing, since the issuance of that Order, Mr. van Rijn has engaged in over 10,000 contemptuous acts. Accordingly, the Court GRANTS an award of attorney fees to Mr. Ferrell for his efforts in prosecuting the Second Motion to Show Cause, the Third Motion to Show Cause, and for injunctive relief, and all enforcement efforts thereto. *See Nettis*, 46 F.Supp.2d at 728-729.

Subsequent to the issuance of this Order, counsel for Third-Party Plaintiffs is hereby directed to submit a request to this Court for consideration of the reasonable amount of such fees. The Court ORDERS that said statement be filed under seal and not released or served upon Mr. van Rijn or his counsel due to the Court's concern that said material is protected by the attorney/client privilege and may be released or otherwise posted on a website. Should Mr. van Rijn or his counsel of record desire to inspect the billing statement, they may do so in-camera before this Court, but they may not copy or take notes as to the statement.

## I.    CAPIAS FOR ARREST

Finally, Third-Party Plaintiffs request that this Court issue a capias for Mr. van Rijn's arrest for his willful refusal to appear at the October 22, 2004. While Mr. van Rijn's conduct is indeed flagrant and contemptuous, the Court is unwilling to take such a drastic measure at this time. However, the Court admonishes Mr. van Rijn once again that even stronger sanctions are at the Court's disposal for his continuing contemptuous conduct.

-25-

### III.     CONCLUSION

For the foregoing reasons, the Court GRANTS Third-Party Plaintiffs' Second Motion to Show

Cause, GRANTS Third-Party Plaintiffs' Third Motion to Show Cause, and GRANTS Third-Party

Plaintiffs' Motion for Injunctive Relief. ECF Dkt. #s 158, 164. Accordingly, the Court FINDS that

Third-Party Defendant Michel van Rijn is in civil contempt of the Agreed Dismissal Entry, this Court's

Memorandum Opinion and Order dated February 27, 2004, and this Court's first Contempt Order.

ECF Dkt. #s 35, 138, 156.

As a sanction for his contemptuous conduct, the Court ORDERS that Third-Party Defendant

Michel van Rijn is hereby enjoined from publishing his website at its current location, or at any

subsequent web address to which he attempts to move, until he removes all references, articles, and

links relating to those individuals about whom he is prohibited from referencing in Paragraph 6(a) of the

Settlement Agreement. The Court further enjoins Mr. van Rijn from posting any references, articles

and links relating to those individuals identified in Paragraph 6(a) of the Settlement Agreement on any

website, including his own or others, as he agreed to do in the Settlement Agreement.

The Court also ORDERS that any and all third persons acting in conjunction with Mr. van Rijn

or in relation to his website be admonished that facilitating or assisting Mr. van Rijn in publishing his

website may constitute aiding and abetting Mr. van Rijn's contemptuous conduct of this Court's

Orders, to the extent that the website contains any reference to any individuals, entities or objects

identified in Paragraph 6 of the Settlement Agreement. The Court further admonishes such third-

persons that any conduct that facilitates Mr. van Rijn's violation of Paragraph 6 of the Settlement

Agreement may be subject to review by and further Order from this Court and may result in not only

-26-

. civil penalties but also criminal contempt.

In addition, the Court ORDERS that Third-Party Defendant Michel van Rijn pay fines to both Third-Party Plaintiffs and the Court for his contemptuous conduct, in amounts to be determined in forthcoming Orders.

Further, the Court ORDERS that Third-Party Defendant Michel van Rijn pay the attorney fees of Mr. Ferrell for his efforts in prosecuting the Second Motion to Show Cause, the Third Motion to Show Cause, and for injunctive relief, and all enforcement efforts thereto. The Court shall determine the reasonable amount of attorney fees to be awarded in a subsequent Order after counsel for Third-Party Plaintiffs submits an itemized billing statement under seal with this Court.

IT IS SO ORDERED.

SIGNED and ENTERED on this 29th day of October, 2004.

_____/s/George J. Limbert_____
GEORGE J. LIMBERT
United States Magistrate Judge